Gants, Ralph D., J.
The plaintiffs, Anthony Jackson (“Jackson”) and Willie Wallace (“Wallace”), in 2003 were both Muslim prisoners in the custody of the Massachusetts Department of Correction (“DOC”) at MCI-Shirley. According to their complaint, the Holy Quran requires that, every Friday, Muslims participate in Jumuah services in which the Imama Muslim spiritual leaderleads his congregation in public worship. MCI-Shirley in 2003 conducted Jumuah services with an Imam once every two Fridays; the Imam led Jumuah services the other Friday at MCI-Concord. Jackson and Wallace contend that the denial of Friday Jumuah services every other Friday at MCI-Shirley violates their right to the free exercise of the Muslim religion, contrary to the First Amendment of the United States Constitution, the federal Religious Land Use and Institutionalized Persons Act of 2000 (“RLUIPA”), 42 U.S.C. §2000cc-l(a)(l)-(2), the Massachusetts Declaration of Rights, and Massachusetts statutory and regulatory law. Jackson also complains that he has been pat-searched by female correction officers, which he contends is contrary to Muslim doctrine that bars the touching of a man by a woman unless she is his wife.
The defendantsthe Department of Correction and various individuals employed by the Department (collectively, the “DOC defendants’jnow move to dismiss their complaint. After hearing, the DOC defendants’ motion to dismiss is ALLOWED IN PART AND DENIED IN PART.
DISCUSSION
The DOC defendants have presented four arguments in support of their motion to dismiss, which this Court will consider in turn.
1. Exhaustion of Administrative Remedies
The DOC defendants contend that all of the plaintiffs’ claims must be dismissed because they failed first to exhaust their administrative remedies. They contend that the plaintiffs’ federal civil rights claims under 42 U.S.C. §1983 and their RLUIPA claims are barred by 42 U.S.C. §1997, part of the Prison Litigation Reform Act, which provides:
No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
They further contend that the plaintiffs’ Massachusetts claims are barred by a comparable Massachusetts statute, G.L. 127, §38F, which provides:
An inmate shall not file any claim that may be the subject of a grievance under section 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E; but the court may consider such claim if a final administrative resolution of a grievance filed pursuant to said section 38E has not been decided within 180 days from the date of filing such grievance, or if the inmate can demonstrate to the court that exigent circumstances exist which, if delayed pursuant to the requirements of this section, would jeopardize the life or seriously impair the health of the inmate, or, for actions seeking equitable relief.
The DOC defendants’ contention that the plaintiffs failed to exhaust their administrative remedies is more complicated than in most prisoner cases, because each plaintiff here did first present grievances on these matters to DOC before presenting them to this Court.
a. Jackson’s Grievances Regarding the Denial of Weekly Jumuah Services with an Imam
On July 8, 2003, Jackson filed Grievance No. 500, requesting that weekly Jumuah services be provided at MCI-Shirley. In this grievance, Jackson made specific reference to an earlier case he had brought raising this same issue when he was at NCCI-Gardner that had recently been considered by the Appeals Court. In Jackson v. Commissioner of Correction, the Appeals Court reversed the Superior Court’s grant of summary judgment, finding that there was a triable issue of fact as to whether the absence of an Imam at Friday Jumuah services violated the DOC regulation that a prison must make reasonable efforts to provide prisoners with access to religious services. 40 *541 Mass.App.Ct. 127 (1996). In that case, no Imam was available to preside over any Friday Jumuah service, but DOC contended that Jumuah services did not need to be led by an Imam, but could be conducted by any knowledgeable adherent of the Muslim faith. Id. at 129. The Appeals Court found that this question of Muslim doctrine was the issue of fact that needed to be resolved at trial. Id. at 130-31.[1]
Grievance No. 500 was “approved” by Stephen Lipka (“Lipka”), MCI-Shirley’s Grievance Coordinator, on July 17, 2003 with a decision that read: “Weekly Jumuah services are not offered at MCI-Shirley. Your request for religious services is in the process of being addressed through the Classification process.” In essence, by approving the grievance, DOC agreed to transfer him to another prison that offered weekly Jumuah services. The transfer apparently has yet to occur.
On August 14, 2003, Jackson submitted an Inmate Religious Services Request Form (“Religious Request Form”) to Greg McCann (“McCann”), MCI-Shirley’s Director of Treatment, asking for weekly Jumuah services “as mandated by the Holy Quran.” He specified that his request was “[t]hat the Muslim community be provided the weekly opportunity to observe their religion as provided the Catholics.” On August 29, 2003, Superintendent Paul Verdini (“Superintendent Verdini”) recommended that Jackson’s request be denied. Superintendent Verdini stated that current staffing levels at MCI-Shirley did not allow for weekly Jumuah coverage, as the Imam provided services to prisoners at MCI-Shirley and MCI-Concord on alternate Fridays. Superintendent Verdini wrote that, on the Fridays when no Imam was present, the inmates were given access to the mosque without an Imam. The Religious Services Review Committee did not meet to consider Jackson’s request until November 21, 2003, when it recommended denial of the request because the current staffing levels allowed only for biweekly coverage by an Imam. The Commissioner of Correction adopted this recommendation and denied Jackson’s request on or about January 13, 2004.
b.Jackson’s Grievances Regarding Pat Searches by Female Correction Officers
On July 17, 2003, Jackson filed Grievance No. 548 requesting that female correction officers be barred from touching him except in an emergency. Jackson reported that on five separate occasions a female officer or sergeant had patted him down. That same day, Lipka denied the request and wrote that Jackson should put his request in writing for submission to the Religious Services Review Committee.
On July 25, 2003, Jackson appealed the denial of his request to Superintendent Verdini, noting that a Superior Court Judge had issued a preliminary injunction on behalf of another Muslim prisoner barring female correction officers from pat-searching that inmate except in an emergency. Superintendent Verdini denied the appeal on August 1, 2003 for the same reason as Lipkathat Jackson must seek recourse from the Religious Services Review Committee. On August 18, 2003, Kristie Ladouceur (“Ladouceur”), the DOC’s Grievance Coordinator, wrote that she supported Superintendent’s Verdini’s decision to deny Jackson’s request because “your issue must be addressed through the Religious Services Review Committee.” She invited him to complete an enclosed form and submit the form to Superintendent Verdini, who would pass it on to the Religious Services Review Committee. Jackson did not complete the form and his grievance was not presented to the Religious Services Review Committee.
c.Wallace’s Grievances Regarding the Denial of Weekly Jumuah Services with an Imam
On April 14, 2003, Lipka suspended Wallace’s privilege to file grievances for six months, contending that the 22 grievances he had filed since June 4, 2002 constituted abuse of that privilege. Wallace appealed the suspension to Superintendent Verdini, who upheld it, noting that, of the 22 grievances Wallace had filed since June 4, 2002, eleven were not grievable under the applicable regulation, 103 CMR. 491. The suspension remained in effect until October 14, 2003.
Denied the ability to file formal grievances, Wallace wrote letters to the Commissioner complaining about the denial of religious services. One of those letters was referred to Superintendent Verdini for a response. On August 27, 2003, in a letter to Wallace, Superintendent Verdini wrote that his staff had looked into Wallace’s allegations and had determined them to be unfounded. He stated that it was “completely inaccurate” to contend that MCI-Shirley did not provide weekly religious services for Muslim inmates. He contended that MCI-Shirley provided religious services on a daily basis for the Muslim inmate population.
On August 28, 2003, Wallace responded to Superintendent Verdini’s letter, explaining that the Jumuah services are Friday mandatory prayer services and that the Imam only conducts these services every other Friday. Superintendent Verdini referred the letter to McCann for a response and, on September 5, 2003, McCann wrote back to Wallace, declaring that MCI-Shirley provides daily access to the mosque and that various Islamic studies are available with the Imam every week. McCann noted that the issue of whether inmates are entitled to weekly Jumuah services presided over by an Imam was currently pending with the Religious Services Review Committee.
d.Did Jackson Exhaust His Administrative Remedies?
The DOC defendants argue that Jackson’s claims regarding the denial of a weekly Jumuah service must be dismissed because he filed this action on October *542 29, 2003, before the Religious Services Review Committee had even met to consider his Religious Request Form and before the Commissioner ultimately denied the request on the recommendation of the Committee. Jackson counters that he exhausted the grievance procedure when his grievance was approved (although not acted upon). He also contends that he was not required to wait until the Religious Services Review Committee resolved his Religious Request because that Committee is not part of the grievance process.
G.L.c. 127, §38E requires the DOC Commissioner to “promulgate regulations to establish a fair, impartial, speedy and effective system for the resolution of grievances filed against the department, its officers or employees, by inmates . . .” G.L.c. 127, §38E(a). The statute also provides that the grievances that inmates may bring under these promulgated regulations “shall include all grievances arising out of or resulting from a condition of or occurrence during confinement . . .” G.L.c. 127, §38E(c). In accordance with Section 38E, DOC regulations define a “grievance” as “a written complaint filed by an inmate on the inmate’s own behalf in accordance with 103 CMR 491.00,” which is the regulatory section governing inmate grievances. 103 CMR 491.06. This regulatoiy section specifically excludes certain matters from the grievance pro-cessclassification, disciplinary decisions, therapeutic diets, and medical and psychiatric decisions, all of which have separate grievance proceduresbut does not exclude religious matters. 103 CMR 491.08. Once a grievance is received, the Institutional Grievance Coordinator must “investigate the factual basis of the grievance and propose a resolution or deny the grievance within ten (10) working days from receipt of the grievance.” 103 CMR 491.10(1)(E). If a grievance is denied, it may be appealed to the Superintendent, who must respond to the grievant within thirty (30) working days from the receipt of the grievance. 103 CMR 491.12. Implicitly, no right of appeal is granted to an inmate whose grievance is granted.
Here, Jackson filed a grievance regarding the denial at MCI-Shirley of weekly Jumuah services with an Imam presiding, and his appeal was grantedapparently, he was to be transferred to another DOC facility which had an Imam presiding weekly at the Jumuah services. Since he had no right to appeal a grievance that was granted, Jackson had exhausted the grievance procedure made available to him by DOC.
To be sure, after his grievance was granted, Jackson filed a Religious Request Form asking that an Imam preside over weekly Jumuah services at MCI-Shirley. However, careful scrutiny of the DOC regulations governing inmate grievances and the section of the DOC Religious Services Handbook (“the Handbook”), issued in April 1999, regar ding’ ReligiousServiceRequests”demons trates thattheReligiousRequestFormisnotpartoftheDOC grievanceprocedure.TheHandbooksectionon“Reli-gious Service Requests” declares that theHandbook “has been developed as a reference tool to assist administrators when evaluatinginmatereligious requests . ” This section goes on to set forth a procedure that should be used “when processing requests for religious items or practices thatarenot addressed in the Religious Services Handbook.” That procedure requires the inmate to submit the Religious Request Form, whichis then presentedtotheSuperintendent oftheinmate’sprisonforhisorherrecommendation, which is then forwarded to the Religious Services Review Committee, which will “make aformal determination to the superintendent.” As a result of this determination,“[t]heHandbookwillthenbeamended accordingly.” There are no deadlines set forth in the Handbookregardingthemakingofany“formal determination.”
The Religious Services Review Committee is not a decision-maker under the DOC regulations governing inmate grievances. Even if it were, the absence of a deadline for the determination means that the procedure to address religious requests, if treated by DOC as part of the grievance procedure, violates the DOC regulations regarding inmate grievances. This Court does not find that DOC established a procedure to govern religious grievances that flies in the face of its own regulation governing all grievances except those specifically excluded under 103 CMR 491.06. Rather, this Court finds that the Religious Services Request section of the Handbook simply establishes a procedure for an inmate to apply to amend the Handbook as to matters not then addressed in the Handbook. Since the Committee is setting religious policy for DOC, rather than simply resolving individual grievances, it is not subject to the deadlines established to resolve inmate grievances in 103 CMR491.10(1)(E) & 491.08.
In short, Jackson filed a grievance regarding the absence of an Imam every other Friday at MCI-Shirley to conduct Jumuah services. This grievance was “approved” and he was referred to the Classification Unit, which one would think would transfer him to a facility where an Imam is present every Friday. He then submitted the Religious Request Form to amend the DOC policy in the Handbook and require every prison to have an Imam present on Friday to conduct Jumuah services. Since he exhausted the grievance procedure provided to him by DOC under its regulations, and since the Religious Request Form is not part of that grievance procedure, the exhaustion requirement under 42U.S.C. §1997 did not require Jackson to wait until the Religious Services Review Committee rendered its formal determination before he filed his federal claims.
*543 Jackson may also proceed with his state claims despite the exhaustion requirement under G.L. 127, §38F. Section 38F provides that “[a]n inmate shall not file any claim that may be the subject of a grievance under Section 38E unless the inmate has exhausted the administrative remedy established pursuant to said Section 38E.” G.L.c. 127, §38F. Here, Jackson exhausted the administrative remedy established under Section 38E when his grievance was granted. He need not have waited under the Religious Services Review Committee made its determination because this “administrative remedy,” if it can be considered such, was not established under Section 38E.
Jackson has also exhausted his administrative remedies with respect to his complaint regarding pat-downs of him by female correction officers. He properly filed a grievance regarding those pat-downs and, when that grievance was denied, appealed its denial to the Superintendent, who also denied it. The fact that the reason for the denial was that these complaints should be resolved by the Religious Services Review Committee, an entity outside the grievance procedure established by DOC regulations, is of no consequence in considering the question of exhaustion. Once the Superintendent denied his appeal, Jackson had exhausted the grievance procedure established by DOC under its regulations.
In conclusion, Jackson’s federal and state claims regarding the denial of a weekly Jumuah service presided over by an Imam and regarding his pat-downs by female correction officers may not be dismissed under either 42 U.S.C. §1997 or G.L.c. 127, §38F.
e. Did Wallace Exhaust His Administrative Remedies?
From the record in this case, it is plain that Wallace did not file a grievance regarding the denial of a weekly Jumuah service presided over by an Imam only because DOC had suspended his privilege to file a grievance from April 14, 2003 until October 14, 2003.[2] Since he was barred from filing a formal grievance, he complained in writing to the Commissioner, who passed one of those letters to Superintendent Verdini, who responded that it was “completely inaccurate” to contend that MCI-Shirley did not provide weekly religious services for Muslim inmates.
Wallace’s federal claims are not barred under 42 U.S.C. §1997, because that statute provides that no federal claim may be brought by a prisoner concerning prison conditions “until such administrative remedies as are available are exhausted.” 42 U.S.C. §1997. When a prisoner has been found to be abusing the grievance procedure under 103 CMR 491.17 and his privilege to file grievances is suspended, no administrative remedy is “available” during that period of suspension and therefore that remedy cannot be exhausted. Similarly, under G.L. 127, §38F, an inmate may not file a state claim in court “unless the inmate has exhausted the administrative remedy established [under G.L.c. 127, §38E].” G.L. 127, §38F. When that administrative remedy is not available to the inmate, he cannot reasonably exhaust it. Moreover, in this case, Wallace has effectively exhausted the only remedy that was left to him, since he wrote directly to the Commissioner and, as aresult, received a letter from the Superintendent rejecting his complaint regarding the absence of an Imam at the weekly Jumuahservice.
Therefore, Wallace’s federal and state claims regarding the denial of a weekly Jumuah service presided over by an Imam may not be dismissed under either 42 U.S.C. §1997 or G.L.c. 127, §38F.
2. Absence of Physical Injury
The DOC defendants contend that 42 U.S.C. §1997e(e) of the federal Prison Litigation Reform Act bars the federal damage claims because it provides, “No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.” 42 U.S.C. §1997e(e).
This Court adopts the interpretation and analysis of the PLRA set forth by United States District Court Judge Nancy Gertner in Shaheed-Muhammad v. Dipaolo:
Where the harm that is constitutionally actionable is physical or emotional injury occasioned by a violation of rights, §1997e(e) applies. In contrast, where the harm that is constitutionally actionable is the violation of intangible rightsregardless of actual physical or emotional injurysection 1997e(e) does not govern.
138 F.Sup.2d 99, 107 (D.Mass. 2001) (emphasis in original). This Court also adopts Judge Gertner’s legal conclusion that First Amendment claims, like those alleged here, are claims for the violation of intangible rights. Id. at 108. “While their violation may be accompanied by emotional or even physical injury, an action under §1983 is not brought to redress such harms.” Id. See also Rowe v. Shake, 196 F.3d 778, 781-82 (7th Cir. 1999) (holding that an inmate’s claim that prison officials interfered with the receipt of his mail was not precluded by §1997e(e) because “a prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained”), citing Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) (holding that § 1997e(e) does not apply to First Amendment claims regardless of the form of relief sought); Williams v. Ollis, Nos. 99-2168 and 99-2234, 2000 WL 1434459 *2 (6th Cir. Sept. 18, 2000) (PLRA did not cover First Amendment retaliation claim); Seaver v. Manduco, 178 F.Sup.2d 30, 37-38 (D.Mass 2002) (“an unwar *544 ranted visual cavity search could be determined to be the type of rights violation that would be actionable under Judge Gertner’s formulation”); Warburton v. Underwood, 2 F.Sup.2d 306, 315 (W.D.N.Y. 1998) (declining to dismiss Establishment Clause claim under §1997e(e) for want of plaintiffs showing of physical injury because “such claims nevertheless deserve to be heard”).
This Court, having adopted this interpretation and analysis, finds that Jackson and Wallace have alleged a violation of their First Amendment right to the free exercise of their religion and, if they prevail at trial, are not barred by §1997e(e) from receiving compensation for the violation of this intangible constitutional right even if they did not suffer physical injury.
3. Violation of the Massachusetts Civil Rights Act
The DOC defendants contend that the plaintiffs’ claims under the Massachusetts Civil Rights Act (“MCRA”), G.L.c. 12, §§ 11(H) & 11(1), must be dismissed because the Commonwealth and its officials are not subject to suit under MCRA. This Court-agrees. In Commonwealth v. Elm Medical Laboratories, Inc., the Appeals Court concluded “that the Legislature, by enacting the State Civil Rights Act, did not intend to bypass c. 258 [the Massachusetts Tort Claims Act] and abolish sovereign immunity for the acts described in §11H.” 33 Mass.App.Ct. 71, 80 (1992). The Court reasoned that “[t]he decisive inquiry... is whether the Legislature, in enacting [MCRA] ‘intended to abrogate a tradition of. . . [sovereign] immunity rooted in history and based upon sound considerations of public policy.’ ” Id. at 77, quoting Chicopee Lions Club v. Dist. Attorney for the Hampden Dist., 396 Mass. 244, 252 (1985). The Court concluded:
We recognize that the State Civil Rights Act, being remedial, “is entitled to liberal construction of its terms,” Batchelder v. Allied Stores Corp., 393 Mass. 819, 822 (1985); Redgrave v. Boston Symphony Orchestra, Inc. 399 Mass. 93, 99 (1987), but that rule of construction is not enough to overcome the absence of any manifestation of the intention of the Legislature to waive sovereign immunity in the enactment of the State Civil Rights Act. There is nothing in G.L.c. 12, §§11H or 111, that even suggests that the Legislature intended a waiver of sovereign immunity.
Id. at 79.
Since sovereign immunity protects the DOC defendants from any money damage claim, this Court finds that the MCRA claim, to the extent it seeks money damages, must be dismissed.[3]
4. The Constitutionality of RLUIPA
The DOC defendants also seek to dismiss the plaintiffs’ federal RLUIPA claim, contending that this federal statute is unconstitutional.
Generally, this Court would not address such a constitutional argument, since there is no reflection in the file that the DOC defendants provided notice of this contention to the United States Attorney General as required by law, so that the United States could move to intervene in this action. See 28 U.S.C. §2403(a) (“[i]n any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality”). However, pragmatically, there is no reason to defer action on this claim, since the United States Supreme Court only days ago denied a facial challenge to the constitutionality of RLUIPA and found the statute constitutional. Cutter v. Wilkinson, No. 03-977 (S.Ct. slip op. May 31, 2005). Specifically, the Supreme Court found no violation of the First Amendment’s Establishment Clause from RLUIPA’s prohibition against state and local governments imposing “a substantial burden on the religious exercise of a person residing in or confined to an institution” unless the government shows that the burden furthers “a compelling government interest” and does so by “the least restrictive means.” Id., slip op. at 9-12. In view of the Supreme Court’s recent decision, this Court shall not dismiss the RLUIPA claim on the grounds asserted that the statute is unconstitutional on its face.
ORDER
For the reasons stated above, the DOC defendants’ motion to dismiss is DENIED, except as to the plaintiffs’ MCRA claim, which is DISMISSED to the extent it seeks money damages.

This question was never resolved at trial, because DOC apparently settled this action with a payment of $20,000.

The suspension of Wallace’s privilege itself was questionable, since he had filed 22 grievances between June 4, 2002 and April 14, 2003. Under 103 CMR 491.17, an inmate must file 20 or more grievances “in any consecutive 180 day period” to be determined to be abusing the grievance procedure.

In view of this finding, this Court need not address whether the plaintiffs have alleged the “threats, intimidation, or coercion” necessary to prevail on the MCRA claim. Nor will this Court address now whether the plaintiffs may maintain a damage action directly under the Massachusetts Declaration of Rights, since it is not clear from the complaint that they are seeking this unprecedented avenue of relief. Even if they were to press such a claim, good sense would dictate that it not be resolved on a motion to dismiss, since fair consideration of this difficult legal issue would be better accomplished with a more complete factual record. See Moore v. McManus, 8 Mass. L. Rptr. 263, 1998 Mass.Super.Ct. LEXIS 281 at **32-33 (Feb. 17, 1998) (Garsh, J.) (“since the law is unsettled as to whether a direct claim can be brought under the Declaration of Rights for money damages, it appears best to deny [the] motion at this time and allow a full record to be developed”).