MacDonald, D. Lloyd, J.
Introduction
Plaintiffs complaint for declaratory relief, injunctive relief and monetary damages arises from the medical treatment and personal care provided to the plaintiff while he was incarcerated at defendant MCI-Shirley and at the defendant Souza Baranowski Correctional Center [“SBCC”). Plaintiffs action, brought pursuant to 42 U.S.C. §1983, 42 U.S.C. §12313 etseq. (the Americans with Disabilities Act), the First, Eighth and Fourteenth Amendments to the United States Constitution, Articles 1, 10, 12, 16 and 26 of the Massachusetts Declaration of Rights, Amendment 114 to the Massachusetts Constitution, G.L.c. 93, §103, G.L.c. 12, §§111 and 11 J, and G.L.c. 127, §32, stems from the defendants’ alleged refusal to provide acceptable treatment for plaintiffs medical needs in connection with his quadriplegia and frontal lobe injury. The defendants have moved for summary judgment on all claims.[2]
For the reasons stated below, the defendants’ motion for summary judgment is ALLOWED as to all federal claims and as to the claims for disability discrimination brought under Article 16, Article 114, the Massachusetts Equal Rights Act and the claim for substantive due process violations. It is DENIED as to the state claims for cruel or unusual punishment brought under Article 26, for unfair treatment brought under G.L.c. 127, §32 and for the claims alleging disability discrimination pursuant to the Massachusetts Civil Rights Act for purposes of obtaining equitable relief.
Background
In 1994, plaintiff Timothy M. Reaves [“Reaves”] was rendered a quadriplegic after a car accident in which he sustained a broken neck and a head injury. The crash occurred after a fatal drive-by shooting of a 14-year-old boy, with Reaves and other suspects in the car fleeing the scene. Reaves was thereafter convicted of first degree murder and on April 25, 1996 was committed to the State Prison for his natural life. From approximately April 25, 1996 to November 2, 1998, Reaves was incarcerated at MCI-Shirley, a medium-security facility. On March 15, 1999, he was transferred to the Health Services Unit at SBCC, the maximum-securiiy facility where he is currently confined.[3]
According to the plaintiffs medical records, despite Reaves’ disabilities, in July of 1995 he was able to feed himself solid foods and liquids with the aid of adaptive equipment. He required minimal to moderate assistance for dressing. He was able to manipulate a manual wheelchair and could sit in it for several hours at a time. He could bathe his face and hands independently. When it became necessary for Reaves to transfer to an electric wheelchair due to elbow contractures, he was able to operate the chair with a joystick-type hand control.
*68 However, since his incarceration, Reaves’ medical records indicate that his physical capabilities and his overall physical condition have declined substantially. His weight has dropped below 100 pounds; he can no longer feed himself, participate in bathing, brush his teeth, or perform any independent tasks. He relies on care providers for all activities of daily life. He is now unable to sit in his wheelchair, and he becomes dizzy when his bed is adjusted to a head-inclined position. He has developed severe bedsores, infections and muscular contractures. Reaves alleges that his physical decline resulted directly from the care and treatment he has received while incarcerated.
His complaint alleges numerous such failures, including the following:
The confiscation of his adaptive devices necessary for his mobility, autonomy and personal care, including his wheelchair and his “universal cuff’ — a device which enabled him to eat independently.
The defendants’ failure to employ trained, licensed, qualified rehabilitation staff, and therapists. This failure in turn has allegedly resulted in the defendants’ failure to provide him with the necessary rehabilitation care required by his condition as set forth by his pre-incarceration medical care plan, and by his independent physicians.
The use of the “one-person pivot” rather than a “two-person pivot” to transfer him from bed to wheelchair. The one-person pivot is painful, dangerous due to the pins in his neck, and has resulted on at least one occasion in him falling to the floor, with no subsequent x-rays taken for several days afterwards.
The defendants’ failure to provide him with foot and hand splints, to install a trapeze above his bed for physical therapy, and to implement a fixed daily care schedule which includes passive range of motion exercises by a qualified therapist, as recommended in a 1998 independent medical evaluation by the Department of Rehabilitation Medicine at the New England Medical Center.
The defendants’ failure to provide him with an adequate shower wheelchair.
The defendants’ failure to adjust his diet and implement a bowel regimen in order to reduce his constipation secondary to his quadriplegia.
The defendants’ failure to ensure that his food is free from spit, hair and other substances.
The defendants’ failure to change his condom-type urinary catheter at least three times a day to reduce the risk of urinary tract infections, in compliance with a physician’s recommended protocol.
The defendants’ failure to provide regular, adequate mental health counseling for him in order to assist him in dealing with his adjustment to his quadriplegia, and with issues related to his frontal lobe disorder.
Reaves also alleges that he is the target of harassment, abuse and neglect by prison staff. Prison records appear to indicate that Reaves has been found to be lying in his own urine for hours at a time on more than one occasion. On July 17, 1997, a correctional officer at MCI-Shirley allegedly punched Reaves in the eye. The correctional officer was subsequently suspended, and the incident was referred to the district attorney for prosecution. Following this incident, Reaves alleges a series of retaliatory actions by MCI-Shirley staff, including further threats of physical violence, verbal abuse by corrections officers including racial slurs, an incident during which prison guards hit Reaves in the head with waist chains, and another incident during which prison guards held a pillow over Reaves’ head for five to seven minutes. He also claims there is a routine practice of DOC, CMS and the UMMS staff from 1997 to the present of issuing Reaves repeated, routine disciplinary complaints and sanctions, which in turn have resulted in isolation sanctions and the loss of Reaves’ visitor, phone, canteen, and other privileges.
Reaves further contends that his mental and emotional condition has deteriorated as a result of the defendants’ actions and/or failures to act. However, the record reflects that Reaves has been a significant behavioral problem in prison. Between April 1999 and August 2004, Reaves received approximately 133 disciplinary reports.
Reaves attributes his behavioral issues to the frontal-lobe injury he sustained in the 1994 car accident, the difficult emotional adjustment to life with quadriplegia, and to the concomitant lack of treatment and counseling available to him within the prison system. (However, during a previous State Prison incarceration in 1986 through 1989 Reaves had in excess of 140 disciplinary infractions.) A CT scan of his head shortly after his accident indicated a small parietal hemorrhage.
In 1995 Reaves was evaluated by Dr. Thomas J. Deters, Ph.D., who noted that Reaves had self-reported “flipping out every day” after the accident, by “being verbally abusive and swearing at others,” a problem he denied having prior to the accident. [Def. SOF ¶30.) Dr. Deters noted this “behavioral sequelae suggestive of frontal lobe injury,” and recommended Reaves be seen for ongoing counseling/psychotherapy to assist him in adjusting to his disabiliiy. [Def. SOF, ¶32.) Dr. Deters also recommended Reaves be transferred to Lemuel Shattuck Hospital for treatment of both his medical and mental health needs.
In September 2000, the DOC contractual medical provider (CMS) referred Reaves to Carol E. Montgomery, Ph.D., a clinical neuropsychologist, for evaluation. Dr. Montgomery reviewed Reaves’ medical records, Dr. Deter’s reports and prior testing, and conducted additional tests to determine to what extent, if any, Reaves’ outbursts were attributable to a *69 frontal lobe injury. She noted that Reaves was refusing his breakfast and lunch meals due to interpersonal difficulty with persons delivering those meals, and was refusing weekly physical therapy because he felt that the medical staff were not performing the therapy properly. Dr. Montgomery concluded that Reaves had a “mild frontal lobe compromise,” but concluded that his behavioral problems were “not driven by the mild frontal lobe compromise noted but [were] instead related to psychological factors involving his personality style” which predated his 1994 injury. [Def. SOF 36.] Dr. Montgomery noted that Reaves’ “apparent physical decompensation and nutritional status is of concern” and suggested that “every effort be made to reverse this process of decline.” She also noted that “a rehabilitation team approach (including a physician, (e.g. physiatrist, psychiatrist) mental health clinician, Occupational] T[herapist] and P[hysical] T[herapist]” was “critical” to maintaining Reaves’ physical and mental health. [See Gelbwasser Ex. 18 — Montgomery Report.]
Discussion
This Court grants summary judgment where there are no genuine issues of material fact and the summary judgment record entitles the moving parly to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. FLesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence establishing the existence of a genuine issue of material fact in order to defeat the motion. Pederson, 404 Mass. at 17.
I. Federal Claims
42 U.S.C. §1997e(a), as amended by the Prison Litigation Reform Act of 1995 (“PLRA”), provides that:
No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
The Supreme Court has held that § 1997(e) requires an inmate to exhaust all available administrative processes before filing a federal suit relating to the conditions of his confinement, even if some or all of the relief the inmate seeks is not available through the administrative process. See Booth v. Churner, 532 U.S. 731, 734 (2001) (“The question is whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint states, but no money. We hold that he must.”). Further, the Supreme Court has also held that the PLRA’s exhaustion provision applies not only to conditions affecting the general inmate population, but also to discrete incidents affecting a single individual. Porter v. Nussle, 534 U.S. 516, 532 (2002) (applying the PLRA’s exhaustion requirement to case where plaintiff-inmate alleged that corrections officers, including defendant Porter, subjected him to a sustained pattern of harassment and intimidation, and had singled him out for a severe beating in violation of Eighth Amendment). The scope of the PLRA has been demonstrated to apply to any inmate suit about “prison life.” Maraglia v. Maloney, 365 F.Sup. 76, 81 (D.Mass. 2005) (holding that the PLRA is applicable to a case involving claims of excessive force by a prison inmate).
The Supreme Court has emphasized the strict enforcement of the exhaustion requirements, stating “[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. And unlike the previous provision, which encompassed only §1983 suits, exhaustion is now required for all ‘action[s] . . . brought with respect to prison conditions,’ whether under §1983 or ‘any other Federal law.” Porter, 534 U.S. at 524 (internal citations omitted).
The federal circuits have recognized that while the PLRA’s exhaustion requirement is mandatory, “certain caveats apply.” See Giano v. Goord, 380 F.3d 670, 677 (2004) (discussing circumstances where exceptions to the affirmative defense of exhaustion might apply). Such caveats apply in situations where it would be unfair to deny a prisoner the right to bring an action because the failure to exhaust administrative remedies was not his or her fault. See id. at 677. An example relies on estoppel principles when prison officials’ actions — such as threats toward an inmate — inhibit an inmate’s ability to utilize administrative grievance procedures. Ziemba o. Wezner, 366 F.3d 161, 163-64 (2d Cir. 2003). An additional caveat could apply where administrative remedies are unavailable to an inmate for various reasons beyond the prisoner’s control. See Giano, 380 F.3d at 677 (citing examples from other circuits). The general trend in these situations in which administrative remedies are deemed to not prevent a suit by a prisoner is that the absence of the exhaustion of these remedies was clearly not the fault of the prisoner. See id.
*70 An application of the strict federal requirements demonstrates Reaves’ failure to exhaust administrative remedies. Clearly Reaves’ complaint as to the allegations against the various defendants concerns the conditions of his prison life. Further, Reaves’ own testimony demonstrates insufficient justification for not pursuing the grievance procedure administratively.
The Department’s general grievance policy, 103 CMR 491.00 et seq., provided for the appropriate grievance procedure for an inmate such as Reaves. Reaves received writing assistance from a Correctional Program Officer at SBCC. When he was questioned regarding alleged harassment by a correctional officer, Reaves stated that he did not file a grievance because it was “not a grievable issue.” Later, when referring to other correctional officers and alleged harassment on their parts, Reaves stated that he did not think he had filed grievances about the incidents. Reaves also responded that it was not a grievable issue when complaining about an incident of taunting by another correctional officer.
In light of Reaves’ failure to exhaust administrative remedies, the motion for summary judgment is allowed as to the federal claims of discrimination on the basis of disabiliiy, cruel or unusual punishment, and substantive due process, as well as to the equitable relief sought pursuant to the federal claims.
II. State Claims
Similarly to the federal claims under 42 U.S.C. §1997, “an inmate may not file a state claim in court ‘unless the inmate has exhausted the administrative remedy established [under G.L.c. 127, §38E].’ ” Jackson v. Verdini, 19 Mass. L. Rptr. 539, 2005 WL 1457748, *6 (Mass.Super.) (Gants, J.), citing G.L.c. 127, §38F. However, the statute explicitly provides for an exception where “exigent circumstances exist which, if delayed pursuant to the requirements of this section, would jeopardize the life or seriously impair the health of the inmate.” G.L.c. 127, §38F. Based on the seriousness of the allegations made by Reaves and the allegedly dramatic decline in his health since entering DOC custody, such circumstances exist for purposes of allowing Reaves to pursue his state claims. Further, there is an independent judicial interest in the prompt final disposition of claims of the character brought by Reaves. Therefore, this court will address those claims at this summary judgment stage notwithstanding his failure to have exhausted his administrative remedies.
Article 114
Reaves alleges discrimination on the basis of his disabilities and, therefore, the deprivation of his rights under Article 114 to the Massachusetts Constitution and under G.L.c. 93, §103. Article 114 states that “[n]o otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth.” However, in Layne v. Superintendent, MCI Cedar Junction, 406 Mass. 156, 159 (1989), the Supreme Judicial Court stated that “[i]f a violation of art. 114 rights can be redressed within the ambit of an existing statute, such as the State Civil Rights Act, there is a well-worn procedural path to relief for such a violation.” The Layne Court noted that judicial relief might be appropriate “even in the absence of a statute providing a procedural vehicle for obtaining relief.” Id., quoting Phillips v. Youth Dev. Program, 390 Mass. 652, 657-58 (1983). In this case, Reaves has asserted claims pursuant to the Massachusetts Civil Rights Act (“MCRA”), G.L.c. 12, §§111, and 11J, and thus a procedural path for relief regarding the Article 114 claim exists. Therefore the claim brought under Article 14 is appropriate for summary judgment in favor of the defendants.
Massachusetts Equal Rights Act
Reaves alleges discrimination pursuant to the Massachusetts Equal Rights Act (“MERA”). The case law in the Commonwealth has clearly established that a claim brought under the MERA is limited to the employment context. Judge Hillman stated in McClure v. Town of East Brookfield, 9 Mass. L. Rptr. 680, 1999 WL 1323628, *4,
Our Supreme Court has held that the “primary function in interpreting the [Commonwealth’s] Civil Rights Act is to ascertain the ‘intent of the legislature, as evidenced by the language used and the considering the purposes and remedies intended to be advanced.’ ” It is the opinion of this court that the same analysis applies with respect to interpretations of the MERA. In considering the legislative intent in the drafting of the MERA, it is clear that recovery under the MERA was intended to be limited to the employment context, covering all aspects of the employment relationship including harassment and discharge. (Internal citations omitted.)
Reaves’ allegations of discrimination brought pursuant to the MERA are not related to the employment context. Accordingly, summary judgment must enter against him.
Substantive Due Process
The Supreme Court has held that ‘‘[wlhere a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.” County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998), citing Albright v. Oliver, 510 U.S. 266, 273 (1994). The Court has expounded on its prior holding and discussion from Graham v. Connor, 490 U.S. 386 (1989), and stated that Graham
does not hold that all constitutional claims relating to physically abusive government conduct must *71 arise under either the Fourth or Eighth Amendments: rather, Graham simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. Substantive due process analysis is therefore inappropriate in this case only if respondents’ claim is “covered by” the Fourth Amendment.
Id. (internal citations omitted).
Here, Reaves’ allegations supporting his claim of violations of his substantive due process rights are essentially the same as those supporting his claim for cruel or unusual punishment. Thus, his claim is covered by a specific provision of the Constitution of the Commonwealth of Massachusetts and, as discussed below, Reaves’ claims as cruel or unusual punishment survive summary judgment. Summary judgment against him on the separate substantive due process claims must enter.
Massachusetts Civil Rights Act
In Commonwealth v. Elm, 33 Mass.App.Ct. 71, 80 (1992), the Appeals Court held that “the Legislature, by enacting the State Civil Rights Act, did not intend to bypass c. 258 and abolish sovereign immunity for the acts described in §11H.” Principles of sovereign immunity protect the DOC defendants from a claim for money damages brought under the MCRA. See Jackson v. Verdini, 19 Mass. L. Rptr. 539, 2005 WL 1457748, *8 (Mass. Super.) (Gants, J.). Therefore, summary judgment is appropriate with regard to the claim for money damages brought under the MCRA. Reaves, however, also seeks equitable remedies, which he can pursue under the MCRA.
The MCRA requires a plaintiff to prove that, “(1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with and (3) that the interference or attempted interference was by ’’threats, intimidation or coercion." Swanset Development Corp. v. City of Taunton, 423 Mass. 390, 395 (1996), citing G.L.c. 12, §111.
The SJC has addressed the definitional context of threats, intimidation, and coercion. See Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474 (1994). A threat “involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm.” Id. (internal citations omitted). Intimidation “involves putting in fear for the purpose of compelling or deterring conduct.” Id. The dictionary definition relied on by the court for coercion involves “the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.” Id.
Viewing the evidence in the light most favorable to the plaintiff, there appear to be genuine issues of material fact with regard to the claim for declaratory and injunctive relief under the MCRA. The plaintiff has testified regarding allegations of receiving a black eye, a broken nose, and other physical incidents. In addition, Reaves testified to verbal abuse on the part of certain DOC officials, alleging that racist and other derogatory terminology was used. This testimony demonstrates a genuine issue of material fact and summary judgment is inappropriate as to alleged Massachusetts civil rights violations.
Article 16
Reaves also alleges Massachusetts Civil Rights Violations pursuant to Article 16 of the Massachusetts Declaration of Rights. The analysis of a cause of action under Article 16 is the same as under the First Amendment. See Opinion of the Justices, 387 Mass. 1201, 1202 (1982). This Court has held that “(w)here a chilling effect is speculative, indirect or too remote, finding an abridgment of the First Amendment rights is unfounded.” South Boston Allied War Veterans Council v. MCAD, 1994 WL 879961 (Mass.Super.) (Flannery, J.), citing Sullivan v. Carrick, 888 F.2d 1, 4 (1st Cir. 1989). Reaves has failed as a matter of law on the claim under Article 16 to present evidence to create any disputed issues of fact with regard to any abridgment of his freedom of speech. His claims for civil rights violations can be pursued in his claim brought under the MCRA.
Cruel or Unusual Punishment — Article 26
The plaintiff also alleges a deprivation of his rights under Article 26 of the Declaration of Rights, based on the defendants’ deliberate indifference to his serious medical needs. He argues that such alleged mistreatment constituted cruel or unusual punishment.
The SJC has stated that “Article 26 bars punishments which are found to be cruel or unusual in light of contemporary standards of decency which marks the progress of society.” Good v. Comm’r of Con., 417 Mass. 329, 335 (1994), citing Michaud v. Sheriff of Essex County, 390 Mass. 523, 533 (1983). In Good the Court held that “a claim is made out if there is a substantial risk that the inmate will suffer serious harm as a result of the conditions of his confinement.” Id. at 336. As to the elements of an Article 26 claim, the Appeals Court has stated:
While the rights guaranteed under art. 26 [of the Massachusetts Declaration of Rights] “are at least equally as broad as those guaranteed under the Eighth Amendment,” a prisoner seeking relief under this provisions of the Massachusetts Constitution must point to both( 1) a condition or situation “which poses a substantial risk of serious harm”: and (2) facts establishing that a prison official has knowledge of the situation and ignores it.
*72 Rasheed v. Comm’r of Correction, 55 Mass.App.Ct. 1112 (2002) (internal citations omitted).
Under such a standard, there are genuine issues of material fact regarding the medical attention and type of treatment that Reaves received. The alleged significant decline in Reaves’ physical and mental condition, in addition to his allegations of specific incidents of grossly improper medical attention demonstrate the existence of a disputed issue of material fact. Accordingly, at this juncture there is no basis to rule as a matter of law that the plaintiff may not recover pursuant to Article 26 of the Declaration of Rights for cruel or unusual punishment.
Unfair Treatment (G.L.c. 127, §32)
Reaves has also asserted a claim pursuant to G.L.c. 127, §32, alleging unfair treatment by the defendants. The statute provides that “[t]he superintendents of the institutions under the supervision of the department of correction shall treat the prisoners with the kindness which their obedience, industry and good conduct merit.” G.L.c. 127, §32. In discussing the statutory cause of action, the Appeals Court has held
The statute “has been construed to assure ‘equal treatment, as far as may reasonably be, for prisoners who are not being disciplined.’ ” “The [plaintiffs’ assertion that the statute has been violated ’’essentially calls for a rational basis analysis of the type applied to equal protection claims where there is no ‘fundamental interest’ or inherently ‘suspect classification.’ “
Rasheed, 55 Mass.App.Ct. at 1112 (internal citations omitted).
Here, while certainly there have been instances during his confinement when Reaves was disciplined, his claims do not arise from allegations as to conditions during the course of his being disciplined. Based on the same disputed issues of material fact that exist with regard to the cruel or unusual punishment claim brought pursuant to Article 26, there exists such a dispute for purposes of deciding whether a valid state interest was served by the conditions of Reaves’ treatment and condition of confinement. Accordingly, summary judgment is inappropriate on this claim as well.
Conclusion
The Court notes that the record before it reflects an extraordinary investment of public medical attention and resources to the plaintiffs care. Moreover, there is abundant evidence that Reaves’ aggravated behavioral issues have as their source conditions that preceded the neurological trauma sustained by Reaves in the car crash incident to his arrest. Under the circumstances, there is much force to the defendants’ argument that Reaves’ claim to having been denied care that meets minimal statutory and/or state and federal constitutional standards is implausible. Nevertheless, the plaintiffs allegations of neglect and abuse are direct and cannot be dismissed as “bare assertions and conclusions.” Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 727-28 (1989). Accordingly, Reeves is entitled to a trial on the causes of action that his fact-based allegations are sufficient — at this stage — to support. Such trial should be held expeditiously in order to bring to prompt and efficient closure the remaining matters raised in Reaves’ complaint.[4]
ORDER
For the reasons discussed above, the defendants’ motion for summary judgment is ALLOWED as to all federal claims, the claims for disability discrimination brought under Article 16, Article 114, and the Massachusetts Equal Rights Act, and the claim for substantive due process violations. It is DENIED as to the state claims for cruel or unusual punishment brought under Article 26, unfair treatment brought under G.L.c. 127, §32, and for the claims alleging disability discrimination pursuant to the Massachusetts Civil Rights Act for purposes of obtaining equitable relief.

 FromJuIy 1, 1994 to December 31,2002, defendant CMS was the Health Services provider for the Massachusetts Department of Correction. CMS is represented by separate counsel and is not a party to the current summary judgment action. From January 1, 2003 to the present, the University of Massachusetts Medical School [“UMMS”] has been the Department of Correction’s Health Services provider. In a separate motion currently pending before this Court, Reaves seeks leave to amend his complaint to add UMMS as a defendant. The court will address Reaves’ Motion to Amend in a separate ruling.

 From November 2, 1998 to March 15, 1999, Reaves was held at Lemuel Shattuck Hospital. Lemuel Shattuck Hospital is not a defendant in this action.

 As per the order below, the plaintiff may pursue his claims for alleged violations of the MCRA, cruel or unusual punishment pursuant to Article 26 and for unfair treatment pursuant to G.L.c. 127, §32. For purposes of clarity and the efficient organization of the case for trial, the Court notes that the following factual issues have survived:
Discrimination based on the defendants’ alleged failure to provide reasonable accommodation for plaintiffs disabilities in connection with (a) disciplinary sanctions for behavior which plaintiff is allegedly unable to control and (b) the benefits of services, programs and activities available to the general inmate population;
The defendants’ alleged deliberate indifference to the serious medical needs of the plaintiff and the conditions of the plaintiffs incarceration; and
Alleged threats, intimidation and coercion.